UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-24523-CIV-CANNON/Otazo-Reyes

**GILEAD SCIENCES, INC.**, and
**GILEAD SCIENCES IRELAND UC**,

    Plaintiffs,

v.

**AJC MEDICAL GROUP, INC., et al.**,

    Defendants.

_____/

## ORDER FOLLOWING EX PARTE MOTION HEARING

**THIS CAUSE** comes before the Court following an Ex Parte Motion Hearing on March 29, 2022. During that Hearing, the Court heard argument from Plaintiffs on the following three motions: Plaintiffs' Ex Parte Motion for Leave to Amend the Complaint ("Motion to Amend"), Plaintiffs' Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Injunctive Relief"), and Plaintiffs' Ex Parte Motion to Exceed the Page Limitations ("Motion to Exceed Page Limit"). At the conclusion of the Hearing, and for the reasons stated below, the Court granted the Motion to Amend and the Motion to Exceed Page Limit, reserving ruling on the Motion for Injunctive Relief. Now, upon full evaluation of the record and pertinent authorities, the Court **GRANTS** the Motion for Injunctive Relief.

### FACTUAL AND PROCEDURAL BACKGROUND

**I.**     **Gilead's Free-Drug Programs**

Plaintiffs are Gilead Sciences, Inc. and Gilead Sciences Ireland UC (together, "Gilead"). Gilead is a global pharmaceutical company that manufactures, among other things, medication for the treatment and prevention of HIV and AIDS [ECF No. 1 ¶ 2]. Gilead was the first company to

develop FDA-approved drug therapies for the purpose of pre-exposure prophylaxis ("PrEP") [ECF No. 1 ¶ 2]. PrEP prevents the spread of HIV to at-risk individuals who have not yet contracted the virus [ECF No. 1 ¶ 2]. Gilead's two drug therapies for PrEP are called TRUVADA for PrEP ("Truvada") and DESCOVY for PrEP ("Descovy") [ECF No. 1 ¶ 2].

In 2004, Gilead created Advancing Access®, a patient assistance program that provides drug therapies at no charge to individuals who lack insurance and are unable to access alternative funding sources [ECF No. 1 ¶ 135]. Under Advancing Access®, the free-drug program for HIV treatment is called the Patient Assistance Program ("PAP"), and the free-drug program for HIV prevention is called the Medication Assistance Program ("MAP") [ECF No. 1 ¶ 136]. Thus, as preventive drug therapies, Truvada and Descovy are offered to eligible individuals at no cost through MAP. Gilead's programs satisfy the federal government's 340B Drug Pricing Program (the "340B Program"), which requires drug manufacturers participating in Medicaid to make their drugs available at significantly reduced prices for participating entities ("Covered Entities") [ECF No. 1 ¶ 36].

In order to enroll a patient in MAP, healthcare providers must certify that several conditions are met [ECF No. 1 ¶ 152]. Once enrolled in PAP or MAP, individuals receive a card to present at any U.S. retail pharmacy to receive their prescribed medication [ECF No. 1 ¶¶ 157–60]. Those pharmacies are tasked with submitting an enrollee's information for approval [ECF No. 1 ¶ 160]. If the claim (also known as a "redemption") is approved, Gilead pays the pharmacy a reimbursement along with a dispensing fee [ECF No. 1 ¶ 160]. Covered Entities under the 340B Program, including some of the defendants in this case, are able to purchase Gilead's medication at discounted prices but receive reimbursements equal to the wholesale price [ECF No. 1 ¶ 226].

Gilead alleges that Defendants have taken advantage of that imbalance through a fraudulent scheme.

## II. The Alleged Fraudulent Schemes

Starting in 2019, Gilead's Advancing Access® records began reflecting a disproportionate amount of redemptions submitted by the clinic and pharmacy defendants in this action [ECF No. 1 ¶ 165]. Gilead alleges that this disproportionate activity is the result of, and evidence of, two massive, multi-level conspiracies to engage in fraudulent conduct [ECF No. 1 ¶¶ 4–15]. Gilead alleges that the two conspiracies generally operate as follows: the clinic defendants identified and fraudulently enrolled patients in MAP, acquired heavily discounted PrEP medication for the pharmacy defendants to dispense, and purchased already-dispensed PrEP medication back from enrollees so that it could be redispensed or resold; the prescriber defendants performed sham "wellness checks" on patients, fraudulently enrolled patients in MAP on behalf of the clinic defendants, and used their credentials to improperly write PrEP medication prescriptions and refills for enrollees; the lab defendants knowingly provided blood testing services in connection with the fraudulent MAP enrollments; the pharmacy defendants dispensed repackaged PrEP medication, submitted fraudulent redemptions, and received significant fees and reimbursements from Gilead that were then divided among the rest of the defendants; and the officer defendants, by virtue of their control of the entity defendants, devised, implemented, and enforced policies that enabled the conspiracies to operate [ECF No. 1 ¶ 16]. According to Gilead, Defendants have reaped millions of dollars in illicit gains at Gilead's expense under this scheme [ECF No. 1 ¶¶ 234, 246].

III.    **Procedural History**

On November 3, 2020, Gilead initiated the instant action [ECF No. 1], bringing a total of nineteen causes of action against fifty-eight defendants. Since then, several defendants have entered into consent final judgments and been dismissed from this action [ECF Nos. 657, 661, 663–64, 678, 700, 765]. Defendants filed a total of twelve motions to dismiss [ECF Nos. 423–25, 427, 429–30, 432, 440–41, 443, 517]. The Court dismissed Gilead's trademark dilution claims (Counts XIII–XIV), but otherwise denied the motions to dismiss [ECF Nos. 669, 696].

On March 14, 2022, Gilead transmitted three ex parte motions to the Court via email: the Motion to Amend, the Motion for Injunctive Relief, and the Motion to Exceed Page Limit. These motions were accompanied by declarations of Gilead's counsel, individuals with knowledge of Defendants' practices, and a forensic accountant.[1] In the Motion to Amend, Gilead seeks leave to file a First Amended Complaint ("FAC") that, among other things, brings claims under the Federal and Florida Racketeer Influenced and Corrupt Organizations Acts ("RICO"), 18 U.S.C. § 1962(c) and Fla. Stat. §§ 772, 895, and adds as "Relief Defendants" twenty-three individuals and entities that currently hold or control the alleged misappropriated funds.[2] Separately, in the Motion for Injunctive Relief, Gilead seeks an asset freeze against certain Defendants to prevent further dissipation and concealment of the misappropriated funds. Gilead argues that such relief is necessary based on the findings of its forensic account, William Waldie, who reports that the

---

[1] Pursuant to this Order, Gilead is ordered to file on CM/ECF the ex parte motions and all of their accompanying exhibits on or before April 15, 2022.

[2] For completeness, the FAC includes the Defendants with whom Gilead has entered into consent judgments [*e.g.*, ECF No. 765 (dismissing action with prejudice as to all claims and causes of action)].

4

"Kingpin Defendants"[3] have engaged in practices consistent with money laundering and, through their conduct, substantially depleted the misappropriated funds as discussed in greater detail below. Lastly, the Motion to Exceed Page Limit requests permission to file an 88-page memorandum in support of the two aforementioned motions.

At the conclusion of the Hearing, Court granted the Motion to Amend[4] and the Motion to Exceed Page Limit,[5] and reserved ruling on the Motion for Injunctive Relief. The Motion for Injunctive Relief is ripe for adjudication.

## LEGAL STANDARD

Courts may issue injunctions and restraining orders under Federal Rule of Civil Procedure 65. Preliminary injunctions are meant to preserve the status quo pending a final determination of the parties' rights and may be issued "only on notice to the adverse party." Fed. R. Civ. P. 65(a). Temporary restraining orders, on the other hand, last for 14 days (renewable once) but may be issued without notice to the adverse party under certain conditions. Fed. R. Civ. P. 65(b).

To obtain either form of relief under Rule 65, a party must establish the following elements: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if

---

[3] The FAC and the Ex Parte Motions identify Kirill Vesselov and Mikhail Vesselov as the "kingpins" of the United Conspiracy, and Michael Bogdan and Twiggi Batista as the "kingpins" of the Physician Preferred Conspiracy.

[4] Leave to amend should be freely granted when "justice so requires." Fed. R. Civ. P. 15(a)(2). Gilead submitted the Motion to Amend within the 30-day window to amend contemplated by the Court's Orders [ECF Nos. 492, 621; *see* ECF No. 696]. This is Gilead's first request to file an amended pleading. And Gilead's new claims are based on investigation of information acquired and synthesized since the start of this complex lawsuit. Fed. R. Civ. P. 15(a)(2). The Court sees no basis under Rule 15 to deny leave to amend, and Defendants will have an opportunity to challenge those claims in due course.

[5] Based on the factual complexity of this case, including the extensive fraudulent conduct alleged and the broad injunctive relief being sought, there is good cause to permit the filing of the overlength memorandum. *See* S.D. Fla. L.R. 7.1(c)(2).

the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). None of the four requirements "has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *State of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) (citing *Siff v. State Democratic Executive Committee*, 500 F.2d 1307 (5th Cir. 1974)). However, preliminary injunctions and temporary restraining orders are "extraordinary and drastic remed[ies] not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)).

## DISCUSSION

At bottom, the Motion for Injunctive Relief seeks an asset freeze on the basis that the Kingpin Defendants are actively concealing and dissipating the allegedly misappropriated funds. Gilead avers that such relief is warranted in connection with its fraud, unjust enrichment, and Lanham Act claims, as well as its new federal and Florida RICO claims. *See Mayoral v. Salin*, No. 1:21-CV-62074, 2021 WL 4804525, at *4 (S.D. Fla. Oct. 14, 2021) (imposing an asset freeze in connection with fraud claims); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693–99 (Fla. Dist. Ct. App. 2018) (outlining the difference between "legal" and "equitable" unjust enrichment claims, and the equitable forms of relief available to the latter); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987–88 (11th Cir. 1995) (upholding an asset freeze imposed pursuant to 15 U.S.C. § 1116(a) in a Lanham Act action); *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 215CV328FTM29MRM, 2016 WL 1572388, at *4 (M.D.

Fla. Apr. 19, 2016) (discussing the circuit split as to whether the federal RICO statute allows private litigants to obtain injunctive relief); *Banco Indus. de Venezuela, C.A. v. Mederos Suarez*, 541 So. 2d 1324, 1326 (Fla. Dist. Ct. App. 1989) ("Unlike its federal counterpart, the Florida RICO statute contains an express provision for private injunctive relief."). The Court is satisfied that the requested relief is warranted based on Gilead's claims of fraud and violations of the Lanham Act and therefore need not discuss the likelihood of success of Gilead's new RICO claims or the propriety of tying the relief sought to Gilead's unjust enrichment claim.

Gilead has established a sufficient likelihood of success on the merits for its claims of fraud and violations of the Lanham Act.[6] As set forth in the Court's Omnibus Order, Gilead has adequately alleged such claims in accordance with Rules 9(b) and 12(b)(6) [ECF No. 669 pp. 24–29 (discussing fraud claims); ECF No. 669 pp. 33–41 (discussing Lanham Act claims)]. As before, Gilead's fraud allegations are supported by several whistleblower reports [FAC ¶¶ 196–203, 207, 209–10, 213, 218–25, 235–36, 239–41], and data consistent with an organized effort to improperly enroll individuals [FAC ¶¶ 183–93; Quan Decl. ¶¶ 11–13]. Further, in support of the instant Motion for Injunctive Relief, Gilead has supplied the new sworn declarations of John Catano, Cassandra Louissaint, and Michael Pierce—all Defendants who previously entered into consent judgments with Gilead and now have provided information about the alleged fraudulent schemes at issue. Likewise, as discussed in the Court's Omnibus Order, the allegations underlying Gilead's Lanham Act claims are sufficiently pled and supported by whistleblower reports and photographic evidence of repackaged Descovy medication dispensed by United Pharmacy LLC [FAC ¶¶ 217,

---

[6] In the First Amended Complaint, Gilead brings fraud claims against members of the alleged Physician Preferred scheme (Counts I–II, and IV) and members of the alleged United scheme (Counts I, III, and V), but brings its claims under the Lanham Act only against members of the alleged United scheme (Counts IX –XIII).

236]. Based on the described allegations and evidence, Gilead has established a sufficient likelihood of success as to its fraud and Lanham Act claims.

Gilead also has shown that it will suffer irreparable injury if the requested relief is not granted. Gilead has done so by submitting the findings of William Waldie, a forensic accounting expert who, after conducting approximately 800 hours of financial analysis and investigation using Defendants' financial records and other materials, concluded that Defendants are engaged in practices consistent with money laundering for purposes of dissipation and concealment [Waldie Decl. ¶¶ 10–11, 20, 22]. Waldie's declaration indicates that Defendants first started receiving reimbursements from Gilead in 2019, and that their dissipation efforts have occurred quickly and at an accelerating rate since the start of this lawsuit [Waldie Decl. ¶¶ 13(c), 14(b), 31, 75, 78]. Specifically, Gilead avers that, as of Spring 2021, the United Defendants had approximately $12.8 million in their bank accounts, despite receiving $41.5 million from Gilead, and the Physician Preferred had approximately $300,000 in their bank accounts, despite receiving $26.7 million from Gilead [Mem. of Law pp. 72–73]. To further establish ongoing alleged wrongdoing by Defendants, Gilead has provided evidence of United Defendants' repeated failure to disclose certain financial records [Kipnees Decl. ¶¶ 15, 21–25] and evidence of the Physician Preferred Defendants' spoliation of emails [Kipnees Decl. ¶¶ 49–52]. These showings are sufficient, for purposes of a temporary restraining order, to establish that Gilead stands to suffer irreparable injury from Defendants' efforts to conceal and dissipate allegedly misappropriated assets. *See Micro Signal Rsch., Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005); *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003); *Hudson Nat. Bank v. Shapiro*, 695 F. Supp. 544, 550 (S.D. Fla. 1988).

Lastly, Gilead has established that the balance of harms and the public interest favor the requested injunctive relief. Although the requested relief is broad in scope, it mirrors the breadth of the alleged wrongful conduct, which involves tens of millions of dollars and at least eighty individuals and entities. Further, Gilead seeks to freeze only those assets that its expert has reasonably traced to the conduct at issue as detailed in the Waldie Declaration [Waldie Decl. pp. 21–66], and Gilead "does not seek to freeze assets in an amount greater than the reimbursement proceeds" [Mem. of Law p. 75; *see F.T.C. v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1316 (S.D. Fla. 2013) (concluding that the scope of an asset freeze should be determined by reasonably approximating the amount of misappropriated funds); *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 15-CV-328-FTM-29MRM, 2016 WL 1572388, at *6 (M.D. Fla. Apr. 19, 2016) (finding it appropriate to freeze assets held by non-defendants where the plaintiff traced the funds and showed commingling)]. Finally, Gilead has shown that a temporary asset freeze will serve the public interest by preventing further dissipation and concealment of funds that were allegedly obtained by taking advantage of a free-drug program and through activities that put consumers at risk, including improperly prescribing and repackaging medication [*see* ECF No. 669 p. 38].

In sum, Gilead has met its burden to justify the relief sought. Any Defendant or Third Party subject to this Order may petition the Court to modify the injunctive relief imposed herein, and the Court will schedule a full hearing on Gilead's Motion for a Preliminary Injunction as set forth below.

## CONCLUSION

It is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Ex Parte Motion to Exceed the Page Limitations is **GRANTED** as indicated in open court on March 29, 2022.

CASE NO. 20-24523-CIV-CANNON/Otazo-Reyes

2. Plaintiffs' Ex Parte Motion for Leave to Amend the Complaint is **GRANTED** as indicated in open court on March 29, 2022.

3. Plaintiffs' Ex Parte Motion for Temporary Restraining Order is **GRANTED** as follows:

   a. This Temporary Restraining Order is entered against United Pharmacy LLC; United Clinical Laboratory, LLC; Community Health Medical Center; Roman Shekhet; Kirill Vesselov; Testing Matters, Inc.; Physician Preferred Pharmacy, Inc; Michael Bogdan; Twiggi Batista; The Recovery Team, Inc.; United Construction Partners, LLC; KMG Holdings, LLC; Leonid Holding, LLC; UDT Software, LLC; The Haven Detox LLC; Indiana Center for Recovery, LLC; 215 West 4th Street QOF, LLC; Haven Health Management, LLC; United Dialysis Center, Inc.; RTS Entertainment LLC; N60AJ, LLC; United Clinical Laboratory of New Jersey, LLC; Prevent Rx3, LLC; Indiana Wellness Rx, LLC; Maggie's Pharmacy, Inc.; Navigator Solutions Inc.; MyRX Systems, LLC; Maureen Bogdan; AJVS, LC; and Ivan Hyppolite (collectively, the "Asset-Restrained Defendants").

   b. Within **five (5) days** of receiving notice of this Order, the Asset-Restrained Defendants shall disclose to Plaintiffs' attorneys a list of all assets held by, for, or on account of them, including any account for which they (a) are a holder or owner of the account, (b) are a beneficiary of the account, or (c) have signatory authority on the account, in any bank, brokerage house, or financial institution anywhere in the world, including account title, account number, and balance, and including any real property for which they (i) are the owner in whole or in part, (ii) contributed to purchasing or maintaining, or (iii) are a beneficiary of the real property.

 c. Plaintiffs may immediately serve this Order upon any bank, brokerage house, or financial institution in which any Asset-Restrained Defendant is known or suspected to hold an account, at which point all assets held by, for, or on account of any Asset-Restrained Defendant, and the balance of any account for which any of them has signature authority, including but not limited to the accounts listed below, shall be frozen and restrained, and any bank, brokerage house, or financial institution holding such funds is restrained from releasing them until further order of this Court.

 d. Any bank, brokerage house, or financial institution that freezes and restrains any assets shall also immediately contact Plaintiffs' counsel, Geoffrey Potter, via email at prepfraud@pbwt.com to disclose the account numbers, titles, and amounts corresponding to the assets so frozen.

 e. Pending further order of this Court, the Asset-Restrained Defendants and their relatives, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, or other device, shall, in the manner described below, be immediately temporarily restrained from:

  i. Transferring, liquidating, encumbering, pledging, loaning, concealing, dissipating, disbursing, assigning, spending, withdrawing, or otherwise disposing of any funds, shares of stock, or other assets that are held in an account for which the Asset-Restrained Defendant (i) is a holder or owner

CASE NO. 20-24523-CIV-CANNON/Otazo-Reyes

of the account, (ii) is a beneficiary of the account, or (iii) has signatory authority on the account, including but not limited to:

1. United Pharmacy – Wells Fargo Account No. 2579878816;

2. Kirill & Mikhail Vesselov – Regions Bank Account No. 0270803285;

3. Mikhail Vesselov – BankUnited Account No. 9855224207;

4. Mikhail & Elena Vesselov – Bank of America Account No. 483033458291;

5. United Pharmacy LLC – Regions Bank Account No. 0213748750;

6. Roman Shekhet – Regions Bank Account No. 0257762309;

7. Mikhail & Elena Vesselov – Regions Bank Account No. 0235789603;

8. United Pharmacy LLC – Regions Bank Account No. 0126722895;

9. The Recovery Team Inc. – Wells Fargo Account No. 8558563014;

10. United Pharmacy LLC – Wells Fargo Account No. 6624203805;

11. United Construction Partners LLC – Wells Fargo Account No. 1134583432;

12. KMG Holdings LLC – Regions Bank Account No. 0182976120;

13. United Clinical Laboratory – Regions Bank Account No. 0182976112;

14. Kirill Vesselov – Regions Bank Account No. 0235789611;

15. Kirill & Mikhail Vesselov – BankUnited Account No. 9855224185;

16. Leonid Holding LLC – Bank of America Account No. 483068017018;

17. Roman Shekhet – Bank of America Account No. 483063402372;

18. UDT Software LLC – Regions Bank Account No. 0245665249;

19. The Haven Detox LLC – Regions Bank Account No. 0182976090;

20. Indiana Center for Recovery LLC – Regions Bank Account No. 0213749390;

21. 215 West 4th Street QOF – Regions Bank Account No. 0281073763;

22. Haven Health Management – Regions Bank Account No. 0293891393;

23. United Dialysis Center, Inc. – Regions Bank Account No. 0182976139;

24. RTS Entertainment LLC – Regions Bank Account No. 0213748920;

25. N60AJ LLC – Regions Bank Account No. 0293891415;

26. Mikhail Vesselov – Wells Fargo Account No. 5488495325;

27. KMG Holdings LLC – BankUnited Account No. 9855224835;

28. Community Health Medical Center LLC – Regions Bank Account No. 0281073305;

29. Kirill Vesselov – BankUnited Account No. 9855224169;

30. KMG Holdings LLC – International Finance Bank Account No. 1200009231;

31. Kirill Vesselov – Coinbase Account No. 5d6b35e7cba09a05ea2c6fdd;

32. 215 West 4th Street QOF LLC – BankUnited Account No. 9855281685;

33. UDT Software LLC – BankUnited Account No. 9855224282;

34. United Clinical Laboratory of NJ – Regions Bank Account No. 0252114414;

35. Prevent Rx3 LLC – BankUnited Account No. 9855281731;

36. Indiana Wellness Rx LLC – BankUnited Account No. 9855281707;

37. Prevent Rx LLC – BankUnited Account No. 9855281715;

    38. KMG New Jersey, LLC – 1st Colonial Account No. 0212004535;

    39. Elena & Mikhail Vesselov – Wells Fargo Account No. 1345208696;

    40. Ameriprise brokerage account receiving funds from Kirill Vesselov;

    41. TD Ameritrade brokerage accounts receiving funds from Roman Shekhet;

    42. Interactive brokerage accounts receiving funds from Leonid Holding LLC;

    43. Physician Preferred Pharmacy – Truist Account No. 1000210047337;

    44. Maggie's Pharmacy – Truist Account No. 1000259748555;

    45. Navigator Solutions Inc. – Truist Account No. 1000173934133;

    46. Change Within, Inc. DBA Testing Matters Toxicology – SunTrust Account No. 1000201758314;

    47. Allied Health Organization Inc. – SunTrust Account No. 1000261018088;

    48. Michael Bogdan – Truist Account No. 1000206156704;

    49. MyRx Systems, LLC – Truist Account No. 1000168008471;

    50. Ivan Hyppolite – Navy Federal Credit Union Account No. 7087239534;

    51. Maureen Bogdan – JPMorgan Account No. 622318280; and

    52. AJVS, LLC – JPMorgan Account No. 819355012.

ii. Transferring, liquidating, encumbering, pledging, loaning, concealing, dissipating, disbursing, assigning, or otherwise disposing of any of the following assets:

    1. The property at 3200 Broadway, Riviera Beach, FL;

    2. The property at 3441 NE 210 St, Aventura, FL;

14

3. The property at 2925 10th Avenue N, Palm Springs, FL;

4. The property at 9-11 Pleasant Street Connector, Framingham, MA;

5. The property at 3905 S Ocean Blvd, Highland Beach, FL;

6. Jewelry purchased from San Lazaro Jewelry using Mikhail Vesselov American Express credit card account ending 41003 or 41037;

7. The 2017 Ferrari F12TDF registered to Kirill Vesselov;

8. The 2011 Learjet 60XR jet registered to N60AJ LLC;

9. The 2020 Ferrari 488 Pista Spider registered to United Clinical and Kirill Vesselov;

10. The 2021 Rolls-Royce Dawn registered to Mikhail Vesselov;

11. The 2021 Rolls-Royce Ghost registered to Kirill Vesselov;

12. The 2016 Rolls-Royce Phantom registered to Mikhail Vesselov;

13. The 2018 Bentley Continental GT registered to Mikhail Vesselov;

14. The 2020 Bentley Continental registered to United Clinical and Kirill Vesselov;

15. The 2021 Porsche 911 Turbo registered to Kirill Vesselov;

16. The 2017 Rolls-Royce Ghost registered to United Clinical and Mikhail Vesselov;

17. The 2022 Bentley Bentayga registered to Mikhail Vesselov;

18. The 2019 Bentley Bentayga registered to Roman Shekhet;

19. The 2020 Mercedes Benz S 63 AMG registered to United Clinical and Kirill Vesselov;

20. The 2022 BMW X7 registered to United Pharmacy and Roman Shekhet;

21. The 2018 Land Rover Range Rover Sport registered to United Clinical and Kirill Vesselov;

22. The 2017 Maserati Granturismo registered to United Billing Solutions and Kirill Vesselov;

23. The 2015 Mercedes-Benz S 63 AMG registered to Roman Shekhet;

24. The 2020 BMW X5 sDrive40i registered to United Billing Solutions and Mikhail Vesselov;

25. The two 2016 Mercedes-Benz Sprinters registered to The Recovery Team Inc. and Kirill Vesselov;

26. The 2016 Cadillac Escalade ESV registered to The Haven Detox LLC and Kirill Vesselov;

27. The 2016 BMW 740i registered to United Billing Solutions and Mikhail Vesselov;

28. The 2014 Ford Expedition Limited registered to The Haven Detox LLC and Kirill Vesselov;

29. The 2018 Ferrari 488 registered to Mikhail Vesselov;

30. 2019 Rolls-Royce Cullinan registered to Kirill Vesselov;

31. 2017 Ferrari GTC4 registered to Mikhail Vesselov;

32. 2012 Maybach 57 registered to Mikhail Vesselov;

33. The pieces from Timepiece Trading LLC purchased between July 11, 2019 and November 23, 2020 from Navigator Solutions SunTrust Account ending in x4133;

34. The pieces from Weston Jewelers purchased between February 13, 2020 and December 9, 2020 on American Express card ending in x6609;

35. The Gulfstream G200 private jet aircraft N-Number N8MF registered to TVPX Aircraft Solutions Inc. Trustee;

36. The property at 264 SE 18th Ave, Deerfield Beach, FL;

37. The property at 217 SE 18th Ave, Deerfield Beach, FL;

38. The 2019 Ferrari 488 Pista registered to Michael Bogdan and Navigator Solutions;

CASE NO. 20-24523-CIV-CANNON/Otazo-Reyes

    39. The 2021 Bentley Flying Spur W12 registered to Michael Bogdan;

    40. The 2020 Ferrari Portofino registered to Michael Bogdan and Navigator Solutions;

    41. The 2020 Mercedes-Benz G 63 AMG registered to Michael Bogdan and Navigator Solutions;

    42. The 2022 Ferrari Roma registered to Michael Bogdan and Navigator Solutions;

    43. The 2019 Mercedes-Benz GT 63 AMG registered to Michael Bogdan and Navigator Solutions;

    44. The 2021 Cadillac Escalade Sport Platinum registered to Michael Bogdan and Navigator Solutions;

    45. The 2021 Chevrolet Tahoe C1500 Premier registered to Michael Bogdan and Testing Matters Inc.;

    46. The 2021 Mercedes-Benz CLA 35 AMG registered to Michael Bogdan and Cassandra Bogdan;

    47. The 2019 Jeep Wrangler Unlimited Rubicon registered to Michael Bogdan; and

    48. The 2018 Chevrolet Tahoe C1500 LT registered to Michael Bogdan and Testing Matters Inc.

4. On or before **April 15, 2022**, Plaintiffs shall serve a copy of this Order on each Asset-Restrained Defendant, file on CM/ECF a corresponding certificate of service, and file on CM/ECF all of the papers submitted to the Court in support of the ex parte motions.

5. On or before **April 18, 2022**, Plaintiffs shall post an undertaking with the Clerk of the Court in the form of a bond, cash or check in the amount of **$100,000.00** as security for the payment of such costs and damages as may be incurred or suffering by any party as a result of any undue harm caused by this Temporary Restraining Order as found by the Court.

6. On or before **April 19, 2022**, Plaintiffs shall order and file on CM/ECF a transcript of the Court's March 29, 2022 Ex Parte Motion Hearing.

CASE NO. 20-24523-CIV-CANNON/Otazo-Reyes

7. This Temporary Restraining Order shall remain in effect for **fourteen (14) days**, through **April 26, 2022**, and shall be renewable once for a like period pursuant to Rule 65(b)(2). *See* Fed. R. Civ. P. 65(b)(2).

8. Any Defendant or Third Party subject to this Order may petition the Court to modify the injunctive relief imposed herein.

9. The Court shall hold a hearing on the requested preliminary injunction at **9:30 A.M. on April 29, 2022**. A Notice of Hearing will be docketed separately.

10. **The deadline for Defendants to answer or respond to the First Amended Complaint is stayed pending resolution of the motion for preliminary injunction.**

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 12th day of April 2022.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record