IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
1:20-CV-24523-AMC

GILEAD SCIENCES, INC.;
GILEAD SCIENCES IRELAND UC,

    Plaintiffs,

vs.

AJC MEDICAL GROUP, INC., *et al*.

    Defendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO MODIFY EX PARTE ORDER AND REQUEST FOR IMMEDIATE HEARING ON THE LIMITED ISSUE OF RELEASING CERTAIN UNITED HEALTH DEFENDANTS' BANK ACCOUNTS FROM THE EX PARTE ORDER**

    United Pharmacy, LLC, United Clinical Laboratory, LLC, Mikhail Vesselov, Kirill Vesselov, and Roman Shekhet ("the United Health Defendants"), by counsel, for their *Memorandum of Law in Support of Emergency Motion for Modification of* Ex Parte *Order and Request for Immediate Hearing on the Limited Issue of Releasing Certain United Health Defendants' Bank Accounts from the Ex Parte Order* ("this Motion"), and pursuant to Local Rule 7.1(d), state as follows:

### Introduction

    The United Health Defendants collectively employ six hundred eighty-three (683) employees[1] across several states across the United States, and have owned and operated respectable, community-serving healthcare facilities and real estate companies for more than thirteen (13) years. This Court's Order following Ex Parte Motion Hearing entered on April 12,

---

[1] As of April 15, 2022.

2022 ("the Ex Parte Order") freezes all assets of every United Health Defendants' individual bank and investment accounts, as all of their affiliated/commonly-owned entities' accounts. (See, D.E. 773; 774).  As well, the Ex Parte Order only requires Gilead to post a bond of One Hundred Thousand Dollars ($100,000), which is far inadequate to cover the damages the United Health Defendants will sustain if its accounts remain frozen.[2] The Order will work a substantial injustice on the United Health Defendants and their related entities and non-party employees, and entering a limited modification of the Order consistent with this Motion would not prejudice any party. As well, the Court should hold a limited hearing on the exclusive issue of whether to release the United Health Defendants' bank accounts from the Ex Parte Order to permit them to continue to operate their long-standing businesses, pending the final hearing on Gilead's request currently scheduled for April 29, 2022.

## Brief Factual Background

### A.    The United Health Defendants

The United Health Defendants include going concerns that have been operating continuously for more than thirteen (13) years. Riker Decl., Ex. A, ¶5. These going concerns include, without limitation, acute and subacute behavioral and mental health facilities, medical detox facilities, pharmacies, a kidney dialysis center, a construction company, and a real estate development company.  Riker Decl., Ex. A., ¶4.  Kirill Vesselov, the Manager of United Health Defendants' entities, other than United Pharmacy, LLC[3], has been operating businesses in Florida since 2009. Riker Decl., Ex. A, ¶6.  Many of the assets described on *Gilead Sciences Ireland UC's*

---

[2] The United Health Defendants reserve their right to challenge the amount of the Bond at the April 29, 2022, and do not waive their right to present evidence on why a higher bond is appropriate under the circumstances.
[3] At all times relevant herein, Mikhail Vesselov was the manager of United Pharmacy, LLC.

Ex Parte *Motions for an Order Freezing Certain Assets of the United Defendants* were acquired long in advance of United Pharmacy's first involvement with Gilead's Medication Assistance Program ("MAP").  Riker Decl., Ex. A., ¶21.

1.      Currently, the United Health Defendants provide medical treatment and services to more than five hundred (500) patients who suffer from mild to severe acute mental and behavioral health issues across three states.  Riker Decl., Ex. A, ¶9.  As well, United Dialysis Center, Inc. treats about thirty (30) patients per month, and those patients' health will be placed at risk if it is unable to use the company's bank accounts to pay its payroll and expenses. Riker Decl., Ex. A, ¶10. The United Health Defendants employ physicians, psychiatrists, masters-level therapists, pharmacists, registered nurses, licensed practical nurses, behavioral health technicians, maintenance personnel, construction laborers and supervisors, property managers, engineers, electricians, administrative and professional office staff, a human resources department, an accounting department, a legal department, and many other positions. Riker Decl., Ex. A, ¶8. Without immediate relief from the *Ex Parte Order,* the United Health Defendants will not be able to pay regularly-scheduled employee wages or its vendors. Riker Decl., Ex. A, ¶15-16.  If the United Health Defendants are unable to pay their staff, it will lose its staff and there is a high risk that patients will suffer severe and life threatening consequences as a result of the *Ex Parte* Order. Riker Decl., Ex. A, ¶16.  Many of the United Health Defendants will be forced to transfer patients on a moment's notice to ensure their continued care, but in today's healthcare climate it is exceedingly difficult to find placement for the patients that the United Health Defendants treat. Riker Decl., Ex. A, ¶11.  There is a lack of time and ability to transfer patients of United Dialysis, and could cause its patients to be hospitalized for kidney dialysis without access to United Dialysis's bank accounts. Riker Decl., Ex. A, ¶12.  As well, for the patients in inpatient care with

the United Health Defendants, they will not receive food or appropriate care if there is no staff. Riker Decl., Ex. A, ¶13.

### B. The Accounts Sought to be Unfrozen

The bank accounts the United Health Defendants request be released from the Order ("the Accounts") are set forth on the exhibits attached to the Declaration of Cheyenne Riker, filed as Exhibits to this *Emergency Motion*. The Accounts consist of operating and payroll accounts and are necessary for the continued operation of the United Health Defendants' going concerns. Without access to those accounts, the individual and entity United Health Defendants will not be able to pay their payroll, employee benefits (401(k), dental, vision, life, and health, *inter alia*), utility bills, credit card bills, car notes, internet/phone service, and other operational expenses that are necessary to the continued operation of the entities. Riker Decl., Ex. A, ¶14. The United Health Defendants' payroll alone is approximately Three Million Five Hundred Thousand Dollars ($3,500,000) per month, and payroll must be run by April 19, 2022 in order to ensure employees receive their regularly scheduled payroll. Riker Decl., Ex. A, ¶15; 20. Additionally, in the event United Health Defendants' employees' positions are terminated, the current labor market is certain to make it especially difficult to replace those employees (placing the United Health Defendants at permanent risk of closure). Riker Decl., Ex. A, ¶17. As well, the individual United Health Defendants, Kirill Vesselov, Mikhail Vesselov, and Roman Shekhet, will not be able to meet their personal obligations unless the Order is specifically tailored to permit access to their accounts. Riker Decl., Exs. A, B, and C.

In the absence of the relief requested herein, the United Health Defendants' assets are certain to deplete at a rapid pace, contrary to Gilead's position that its assets be frozen. Riker Decl., Ex. A., ¶20. The United Health Defendants' businesses will not be able to pay their expenses, or

make payroll for its hundreds of employees if the Order is not modified to permit access to the Accounts. *Riker Decl.*, Ex. A, ¶10, 15.

## Argument

A.   **The Law Favors Modification.**

In the Order, the Court, consistent with Rule 65(b)(4) of the Federal Rules of Civil Procedure, permits any Defendant or Third Party subject to the Order to modify the injunctive relief found therein. D.E. 773. Under Rules 65(d)(4), a party must first notify the moving party of its intent to modify the Order. Counsel for the United Health Defendants issued notice to Counsel for Gilead on April 14, 2022. *Riker Decl.*, Ex. D.

While the upholding of an asset freeze is a justified "means of preserving funds for equitable remedy of disgorgement," an *ex parte* temporary restraining order is viewed as an extreme remedy "to be used only with the utmost caution," *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005); *Levine v. Camcoa Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995) (Hill, C.J., concurring), and "very few circumstances" justify granting such relief, *Glachman*, 2010 WL 3293346, at *4 (quoting *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)). This stringent scrutiny "is particularly warranted ... where the Defendants are unaware that judicial proceedings have been commenced and the relief Plaintiffs request is drastic." *Glachman*, 2010 WL 3293346, at *4 (quoting *Dent Zone Network, LLC v. Heritage Admin. Co.*, No. 4:03-cv-195, 2003 WL 21183706, at *1 (E.D. Tex. May 21, 2003)). Ultimately, temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as it is necessary to hold a hearing, and no longer." *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-CV-20862, 2021 WL 3618227, at *5–6 (S.D. Fla. Aug. 16, 2021); citing *Granny Goose Foods, Inc.*, 415 U.S. at 439; *see also Canal Auth.*

*of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974) ("There is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy.").

In this case, the United Health Defendants requests a very limited remedy: that the Court temporarily modify the Order to unfreeze the Accounts pending the full evidentiary hearing scheduled for April 29, 2022. This relief is consistent with case law that requires temporary restraining orders be finely tailored to their intended purpose. Here, Gilead identified its concern that the long-time businesses of the United Health Defendants will somehow evaporate if the Court does not freeze the Accounts; however, the *Ex Parte Order* will bring Gilead's alleged fears to fruition by preventing the companies from operating. In fact, the basis of Gilead's concern that the United Health Defendants were going to dissipate or conceal assets, is undermined by the fact that United Health Defendants identified, in negotiating for a stipulation with Gilead for this limited purpose, the more than Fifty-Million Dollars ($50,000,000) in real property assets owned collectively among the United Health Defendants. Gilead is also aware that many of the properties were owned long before United Pharmacy's first reimbursement from Gilead's MAP Program).

Ultimately, the United Health Defendants are merely requesting the Court to restrict the Order in a manner that will "serv[e its] underlying purpose of preserving the status quo and preventing irreparable harm." *See*, *Millennium Funding, Inc.*, 2021 WL 3618227, at *5-6. Here, the limited remedy proposed is necessary under the circumstances. The United Health Defendants' request limited relief pending full hearing on Gilead's preliminary injunction request, which will not prejudice Gilead. In fact, granting the relief requested herein would actually *benefit* Gilead in the event that, ultimately, a judgment was obtained against the United Health Defendants.[4]

---

[4] An event that, based on a review discovered evidence, is highly unlikely.

**B.  The Court should hold a hearing limited to the issue of modification, but should keep the current hearing scheduled for April 29, 2022.**

The magnitude of this case, including the documentary evidence, volume of witnesses and deposition transcripts, and the locations and schedules of the numerous parties involved makes it particularly difficult to prepare, in short order, for a full preliminary injunction hearing. As such, the Court should modify the Order to reflect that the Accounts be unfrozen pending final determination of Gilead's request for preliminary injunction.

The Order sets a hearing for April 29, 2022 at 9:30 AM for a hearing on Gilead's request for preliminary injunction ("the PI Hearing"). There is adequate time to prepare for the PI Hearing, as scheduled, but the United Health Defendants will not have adequate time to prepare for the full hearing until the currently scheduled hearing date. Counsel for the United Health Defendants are working diligently to issue subpoenas and prepare evidence in support of their position, but the volumes of information that must be digested and prepared makes it impossible to be prepared for a full hearing on the merits of the preliminary injunction request.

As such, the United Health Defendants request a short hearing for the sole purpose of deciding on the requests described herein. The requested remedy would preserve the business and personal operations of the United Health Defendants, while leaving subject to the Order all other remaining assets subject thereto. United Health Defendants are amenable to leaving all assets other than the Accounts subject to the Court's order, pending the Court's ruling upon the PI Hearing.

**C.  The Court should release the requested Accounts on or before April 19, 2022.**

Pursuant to Local Rule 7.1(d)(1), the United Health Defendants would respectfully notify this Court that they request release of the Accounts on or prior to April 19, 2022. As referenced in the instant Motion, the United Health Defendants' payroll alone is approximately Three Million

7

Five Hundred Thousand Dollars ($3,500,000) per month, and payroll must be run by April 19, 2022 in order to ensure employees receive their regularly scheduled payroll. Moreover, the United Health Defendants' bank accounts should be unfrozen on or before April 19, 2022 to allow their other businesses and personal lives to continue to function.

    **D.**    **The United Defendants object to the bond amount issued in this matter.**

The purpose of a bond is to compensate for the costs and damages sustained by any party found to be wrongfully restrained by the temporary restraining order or preliminary injunction. Fed. R. Civ. P. 65(c); *HPC US FUND 1, L.P. v. Wood*, No. 13-61825-CIV, 2014 WL 12496559, at *2 (S.D. Fla. May 9, 2014). Gilead was ordered to post a bond of $100,000, despite the fact that the assets subject to the Order far exceed $100,000, and the potential damage resulting from the Order is millions of dollars. Plaintiffs, who originally requested a $50,000 bond, knew the bond amount would be insufficient to protect against the likely (and forthcoming) catastrophic damages to the United Health Defendants. The United Defendants object to the bond amount, which will be the subject of further memoranda in opposition to the preliminary injunction.

## CONCLUSION

The United Health Defendants' bank accounts should be unfrozen to allow their businesses and personal lives to continue to function. As long-standing businessmen with strong reputations in their respective industries, the individual United Health Defendants have not, and do not intend to, dissipate or conceal assets. The purpose of a temporary restraining order is to preserve the status quo, and the status quo is best preserved by unfreezing the United Health Defendants' bank accounts, pending final determination of the preliminary injunction by the Court. This very limited interim remedy is reasonable under the circumstances, and prejudices none of the parties, whereas failing to modify the Order could cause fatal consequences to both the United Health Defendants'

businesses and their patients.

Respectfully submitted,

*/s/Cheyenne N. Riker*
CHEYENNE N. RIKER
CHEYENNE N. RIKER, PLLC
Florida Bar Number: 1023406 2925
10th Avenue N.
Palm Springs, FL 33461
Primary: criker@havenhealthmanagement.com
Secondary: crivers@havenhealthmanagement.com

**Clendening Johnson & Bohrer, P.C.**

*/s/Lonnie D. Johnson*
 Lonnie D. Johnson (*admitted pro hac vice*)
Primary: ljohnson@lawcjb.com
Secondary: mmccutchen@lawcjb.com
409 W. Patterson Drive, Suite 205
Bloomington, IN 47403

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on April 18, 2022, on all parties, counsel of record via E-Mail or by using CM/ECF.

> /s/*Cheyenne N. Riker*
> CHEYENNE N. RIKER
> CHEYENNE N. RIKER, PLLC
> Florida Bar Number: 1023406 2925
> 10th Avenue N.
> Palm Springs, FL 33461
> Primary: criker@havenhealthmanagement.com
> Secondary: crivers@havenhealthmanagement.com
>
> **Clendening Johnson & Bohrer, P.C.**
>
> /s/*Lonnie D. Johnson*
>  Lonnie D. Johnson (*admitted pro hac vice*)
> Primary: ljohnson@lawcjb.com
> Secondary: mmccutchen@lawcjb.com
> 409 W. Patterson Drive, Suite 205
> Bloomington, IN 47403