UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-24523-CIV-CANNON/Otazo-Reyes

**GILEAD SCIENCES, INC.**, and
**GILEAD SCIENCES IRELAND UC**,

    Plaintiffs,
v.

**AJC MEDICAL GROUP, INC. et al.**,

    Defendants.
_____/

## ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT, ENTERING PERMANENT INJUNCTION, AND CLOSING CASE

**THIS CAUSE** comes before the Court upon Gilead Sciences, Inc.'s and Gilead Sciences Ireland UC's (collective "Gilead" or "Plaintiffs") Motion for Default Judgment and Permanent Injunction (the "Motion") against Defendants Baikal Marketing Group, Inc., Arsen Bazylenko, Tatiana Rozenblyum, Priority Health Medical Center, and Nick Myrtil (collectively, "Defaulting Defendants") [ECF No. 883].  The Court has reviewed the Motion and Supporting Memorandum of Law [ECF Nos. 884].  The Court held a hearing on the Motion on October 19, 2022 [ECF No. 890] and subsequently ordered Plaintiffs to provide supplemental briefing as to the status of service of the First Amended Complaint ("FAC") upon the Defaulting Defendants [*compare* ECF No. 1 with ECF No. 782].  The Court has reviewed the supplemental briefing [ECF No. 895-1] along with the entire record and is otherwise advised in the premises.  For the following reasons, Plaintiffs' Motion for Default Final Judgment [ECF No. 883] is **GRANTED IN PART AND DENIED IN PART**.  Final default judgment is entered against the Defaulting Defendants on Counts XIII and XVI of the FAC; final default judgment is entered against Baikal Marketing Group, Inc. and Priority Health Medical Center on Counts I, III, V, VI, VIII, IX, X, XI,

XII, XIV, and XV of the FAC; final default judgment is entered against Baikal Marketing Group, Inc., Arsen Bazylenko, and Tatiana Rozenblyum on Counts XVII, XVIII, XIX, and XX of the FAC; Gilead is awarded trebled damages in the amount of $131,400,000 against Baikal Marketing Group, Inc., Arsen Bazylenko, and Tatiana Rozenblyum; and Priority Health Medical Center and Nick Myrtil are jointly and severally liable for $43,800,000 because they were not served properly with the newly added RICO claims in the FAC.

## FACTUAL BACKGROUND[1]

### I. Gilead's Free-Drug Programs

Gilead is a global pharmaceutical company that manufactures, among other things, medication for the treatment and prevention of HIV and AIDS [ECF No. 782 ¶ 2]. Gilead was the first company to develop FDA-approved drug therapies for the purpose of pre-exposure prophylaxis ("PrEP") [ECF No. 782 ¶ 2]. PrEP prevents the spread of HIV to at-risk individuals who have not yet contracted the virus [ECF No. 782 ¶ 2]. Gilead's two drug therapies for PrEP are called TRUVADA for PrEP ("Truvada") and DESCOVY for PrEP ("Descovy") [ECF No. 782 ¶ 2].

In 2004, Gilead created Advancing Access®, a patient assistance program that provides drug therapies at no charge to individuals who lack insurance and are unable to access alternative funding sources [ECF No. 782 ¶ 151]. Under Advancing Access®, the free-drug program for HIV *treatment* is called the Patient Assistance Program ("PAP"), and the free-drug program for HIV *prevention* is called the Medication Assistance Program ("MAP") [ECF No. 782 ¶ 154]. Thus, as preventive drug therapies, Truvada and Descovy are offered to eligible individuals at no cost

---

[1] This following section is an abbreviated recitation of the facts previously set forth in the Court's November 29, 2021 Omnibus Order [ECF No. 669].

through MAP. Gilead's programs are consistent with the federal government's 340B Drug Pricing Program (the "340B Program"), which requires drug manufacturers participating in Medicaid to make their drugs available at significantly reduced prices for participating entities ("Covered Entities") [ECF No. 782 ¶ 40].

In order to enroll a patient in MAP, healthcare providers must certify that several conditions are met [ECF No. 782 ¶ 170]. Once enrolled in PAP or MAP, individuals receive a card that they can present at any U.S. retail pharmacy to receive their prescribed medication [ECF No. 782 ¶¶ 174–77]. Those pharmacies are tasked with submitting an enrollee's information for approval [ECF No. 782 ¶ 176]. If the claim (also known as a "redemption") is approved, Gilead pays the pharmacy a reimbursement along with a dispensing fee [ECF No. 782 ¶ 178]. Covered Entities under the 340B Program, including some of the defendants in this case, are able to purchase Gilead's medication at discounted prices, but receive reimbursements equal to wholesale prices [ECF No. 782 ¶ 243]. Gilead alleges that Defendants have taken advantage of that imbalance through a fraudulent scheme.

### II. The Alleged Fraudulent Scheme

Starting in 2019, Gilead's Advancing Access® records began reflecting a significantly disproportionate number of redemptions submitted by the clinic and pharmacy defendants in this action [ECF No. 782 ¶ 183]. Gilead alleges that this disproportionate activity is proof of, and the result of, massive, multi-level, and interconnected conspiracies to engage in fraudulent conduct [ECF No. 782 ¶¶ 4–19]. Gilead alleges that the conspiracies generally operate as follows: the clinic defendants identify and fraudulently enroll patients in MAP, acquire heavily discounted PrEP medication for the pharmacy defendants to dispense, and purchase already-dispensed PrEP medication back from enrollees so that it may be re-dispensed or resold; the prescriber defendants

perform sham "wellness checks" on patients, fraudulently enroll patients in MAP on behalf of the clinic defendants, and use their credentials to improperly write PrEP medication prescriptions and refills for enrollees, the lab defendants knowingly provide blood testing services in connection with the fraudulent MAP enrollments; the pharmacy defendants dispense repackaged PrEP medication, submit fraudulent redemptions, and receive significant fees and reimbursement from Gilead which are then divided among the rest of the defendants; and the officer defendants, by virtue of their control of the entity defendants, devise implement, and enforce policies that enable the conspiracies to operate [ECF No. 782 ¶ 20]. According to Gilead, Defendants have reaped millions of dollars in illicit gains at Gilead's expense under this scheme [ECF No. 782 ¶¶ 234, 246].

### III. Relevant Procedural History

On November 3, 2020, Gilead initiated the instant action [ECF No. 1], bringing a total of nineteen causes of action against fifty-eight defendants. That same day, Plaintiffs moved for a Temporary Restraining Order ("TRO") based on all nineteen counts [ECF No. 3]. Finding that Plaintiffs were likely to succeed on the merits, U.S. District Judge Kathleen Williams granted the TRO [ECF No. 27]. The Defaulting Defendants then appeared through counsel and consented to entry of an order converting the TRO into a preliminary injunction [ECF Nos. 87, 127]. Although the Defaulting Defendants initially appeared and consented to the entry of the preliminary injunction, none of them answered the Complaint or otherwise participated in the action thereafter, leading to entry of a Clerk's Default on March 21, 2021 [ECF No. 498].

Following the Clerk's Entry of Default, the Court issued an Omnibus Order which, among other things, determined that Gilead's initial Complaint [ECF No. 1] plausibly alleged claims on all but two of the counts (Count XIII – Federal Dilution of Mark and Count XIV – Florida Dilution

and Tarnishment of Mark) [ECF No. 669 pp. 23–47, 48 ¶ 2]. On March 14, 2022, about one year after the Clerk entered default against the Defaulting Defendants, Gilead filed an *ex parte* Motion to Amend the Complaint, seeking leave to add claims under the federal and Florida Racketeer Influenced and Corrupt Organization ("RICO") Acts, 18 U.S.C. § 1962(c) and Fla. Stat. §§ 772, 895, against numerous defendants, including the Defaulting Defendants [ECF No. 771]. Gilead also filed a Motion seeking an asset freeze because other defendants in this case were actively concealing and dissipating the alleged misappropriated funds [ECF No. 770]. After a hearing on both Motions [ECF No. 774], the Court granted Gilead's Motion to Amend the Complaint and imposed an asset freeze [ECF No. 779]. In that order, the Court determined it did not need to analyze the likelihood of success of Gilead's new RICO claims because Gilead already had established a likelihood of success on its common law fraud and Lanham Act claims [ECF No. 779 pp. 6–9].

On April 18, 2022, Gilead filed its FAC, bringing four additional counts against defendants, including the Defaulting Defendants, based on violations of the federal and Florida RICO Acts [ECF No. 782 ¶¶ 506–54]. Over the next few months, Gilead settled and/or dismissed the claims against all Defendants except the Defaulting Defendants [ECF Nos. 845, 862, 873, 877, 879, 881].

Fast forward to August 3, 2022, when Gilead moved for Default Final Judgment [883] on the FAC [ECF No. 502], seeking joint and several liability against the Defaulting Defendants [ECF No. 516]. The Court held a hearing on Gilead's Motion [ECF Nos. 890, 892] and then ordered supplemental briefing on the status of service of the FAC on the Defaulting Defendants [ECF Nos. 891, 895]. *See* Fed. R. Civ. P. 5(a)(1)(B), (a)(2); *Campbell v. Bennett*, 47 F.4th 1362, 1366–67 (11th Cir. 2022). The Motion is ripe for adjudication.

**LEGAL STANDARD**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court is authorized to enter a final default judgment against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default." *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019) (quoting *DirecTV, Inc. v. Huyunh*, 328 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (internal quotation marks omitted). "Granting a motion for default judgment is within the trial court's discretion." *Id.* at 1259 (citing to *Nishamatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient factual basis in the pleading for the judgment to be entered. *Id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default . . . .").

**DISCUSSION**

**I. Liability**

Gilead moves for Default Final Judgment against all Defaulting Defendants on the following six counts:

- Count XIII – Civil Conspiracy to Violate the Lanham Act;
- Count XVI – Unjust Enrichment;
- Count XVII – Violation of 18 U.S.C. § 1962(C) (Federal RICO);
- Count XVIII – Violation of the Florida RICO Act;
- Count XIX – Conspiracy to Violate 18 U.S.C. § 1962(D) (Federal RICO); and
- Count XX – Conspiracy to Violate the Florida RICO Act

[ECF Nos. 883, 884].

Gilead also moves for Default Final Judgment against Defendants Baikal Marketing Group, Inc. and Priority Health Medical Center on the following eleven counts:

- Count I – Common Law Fraud;

- Count III – Aiding and Abetting Fraud;

- Count V – Conspiracy to Commit Fraud;

- Count VI – Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA);

- Count VIII – Civil Conspiracy to Violate FDUTPA

- Count IX – Violation of 15 U.S.C. § 1114(1)(a);

- Count X – Violation of 15 U.S.C. § 1114(1)(b);

- Count XI – Violation of 15 U.S.C. § 1125(a)(1)(A);

- Count XII – Violation of 15 U.S.C. § 1125(a)(1)(B);

- Count XIV – Common Law Unfair Competition; and

- Count XV – Trademark Infringement Under Florida Trademark Registration and Protection Act

[ECF Nos. 883, 884].

The Court already determined in its Omnibus Order that the factual allegations in the initial Complaint stated a plausible claim for Counts I, III, V, VI, VIII, IX, X, XI, XII, XIII, XIV, XV, and XVI [ECF No. 669 pp. 23–47]. Because the FAC contains the same factual allegations supporting these counts as the initial Complaint [*compare* ECF No. 1 with ECF No. 782], the Court need not reexamine that prior determination and hereby enters judgment against the Defaulting Defendants on those counts. The Court has not, however, previously ruled on whether the FAC contains factual allegations to state a plausible claim for Counts XVII, XVIII, XIX, and XX—

violations under the Federal and Florida RICO Acts [*see* ECF No. 779 p. 7]. The Court now turns to that issue.

After a close examination of the FAC, the Court determines that it plausibly alleges violations of the federal and Florida RICO Acts. To state a claim under the federal RICO Act, a plaintiff must show: (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity (5) resulting in injury. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282–83 (11th Cir. 2006), recognized as abrogated on other grounds in *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1240, 1348 (11th Cir. 2016). Because the Florida RICO Act is patterned after the Federal RICO Act, the elements are the same. *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004) (noting that "Florida's RICO law 'is informed by case law interpreting the federal RICO statute . . . on which [Florida RICO] is patterned'" (quoting *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994) (brackets added))).

To satisfy the first two elements, Gilead must establish "conduct of an enterprise" and that the enterprise had a common goal. *Williams*, 465 F.3d at 1283. "An enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Id.* (quoting 18 U.S.C. § 1961(4)). "The existence of an enterprise is 'proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000) (quoting *United States v. Turkette*, 452 U.S. 577, 583 (1981)). Additionally, "the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *Id*.

Here, the FAC plausibly alleges facts sufficient to establish the conduct of a RICO enterprise. The FAC alleges that all of the Defaulting Defendants were part of a conspiracy (the "United Conspiracy") [ECF No. 782 ¶ 111], which fraudulently enrolled patients in Gilead's MAP [ECF No. 782 ¶¶ 4–16, 20, 74–109]. Members of the United Conspiracy worked in concert with one another with the common goal of profiting off of Gilead's MAP [ECF No. 782 ¶ 4–16, 20], and many of the entities involved in the conspiracy operated out the same facilities [ECF No. 782 ¶ 111]. The FAC alleges that members of the United Conspiracy unlawfully obtained PrEP medication through the 340B Program; unlawfully enrolled patients in Gilead's MAP; dispensed PrEP medication to unlawfully enrolled patients; and fraudulently submitted claims for reimbursement to Gilead [ECF No. 782 ¶ 509]. These factual allegations satisfy the first two elements.

To satisfy the third and fourth elements, Gilead must show that there were "at least two acts of racketeering activity." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1286, 1397 (11th Cir. 1994). Pursuant to 18 U.S.C. § 1961(1)(B), racketeering activity includes any act which is "indictable" under 18 U.S.C. § 1343. 18 U.S.C. § 1961(1)(B). Section 1343 makes it illegal to obtain money by fraudulent pretenses by means of wire in interstate commerce. *See* 18 U.S.C. § 1343. In this case, the FAC alleges that members of the United Conspiracy on numerous occasions fraudulently enrolled individuals in Gilead's MAP and sought reimbursement by submitting applications and reimbursement forms through the internet, fax, and other electronic means [ECF No. 782 ¶¶ 11–16, 182, 370, 513, 524, 528]. Each of these submissions of fraudulent enrollment and reimbursement constituted a separate predicate act, and therefore Gilead has satisfied the third and fourth elements. As to the fifth and final element, the FAC alleges that Gilead relied on the fraudulent enrollments and reimbursement requests, resulting in them paying

tens of millions of dollars to members of the United Conspiracy [ECF No. 782 ¶¶ 12, 13, 19, 245]. This satisfies the final element, and the FAC contains plausibly alleges claims for Counts XVII, XVIII, XIX, and XX.

Although the FAC plausibly alleges claims for the federal and Florida RICO counts, final default judgment cannot be entered against the Defaulting Defendants on those counts unless Gilead properly served the Defaulting Defendants in accordance with Rule 5 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 5(a)(2) (requiring Rule 4 service of a pleading where pleading asserts a new claim for relief against a defaulting party). Following supplemental briefing on this issue [ECF No. 895-1], the Court determines that Gilead properly served Baikal Marketing Group, Inc., Arsen Bazylenko, and Tatiana Rozenblyum. Gilead perfected service on Baikal Marketing Group, Inc. in accordance with Rule 4(h)(1)(B) by delivering a copy of the FAC to Tatiana Rozenblyum—a corporate officer of Baikal Marketing. Gilead perfected service of process on Arsen Bazylenko in accordance with Rule 4(e)(2)(B) by leaving a copy of the FAC with an adult—Tatiana Rozenblyum—at Mr. Bazylenko's usual place of abode. Gilead perfected service on Tatiana Rozenblyum in accordance with Rule 4(e)(2)(A) by personally delivering a copy of the FAC to her. And Gilead provided copies of the server's affidavits for all three of these Defendants with the supplemental briefing [ECF Nos. 895-9, 895-10, 895-11]. Thus, Default Final Judgment on the RICO counts can be entered against Baikal Marketing Group, Inc., Arsen Bazylenko, and Tatiana Rozenblyum.

Gilead did not, however, properly serve the FAC on Priority Health Medical Center or Nick Myrtil. Gilead asserts that it served those Defendants in accordance with Rule 4(e)(1) and Rule 4(h)(1)(A) [ECF No. 895-1 pp. 7–8]. Rule 4(h)(1)(A) authorizes service on a corporation in the manner prescribed by Rule 4(e)(1) for serving an individual, Fed. R. Civ. P. 4(h)(1)(A), and

Rule 4(e)(1) provides that service within the United States on an individual may be accomplished by following the laws for service prescribed by the state where the district court is located, Fed. R. Civ. P. 4(e)(1). According to Gilead, it served Priority Health Medical Center and Nick Myrtil in accordance with Sections 48.161 and 48.181(1) of the Florida Statutes [ECF No. 895-1 pp. 8–11]. As relevant here, those sections apply to Florida residents (individuals or corporations) who are concealing their whereabouts and therefore authorize *substituted* service on those residents by leaving a copy of the complaint with the Florida Secretary of State. *See* Fla. Stat. § 48.161; Fla. Stat. § 48.181(1). As Gilead admitted at the Hearing, it never moved for permission to use substituted service of process [ECF No. 892 p. 9 (admitting that Gilead "could have come and asked for substitute service" but did not)]. Because the Court did not authorize substituted service, Gilead cannot rely on Sections 48.161 and 48.181 to perfect service on Prior Health Medical Center and Nick Myrtil. And without proper service of the FAC on those defendants, the Court cannot enter final default judgment against those Defendants on Gilead's RICO claims.

## II. Measure of Damages

Having found liability against Baikal Marketing Group, Inc., Arsen Bazylenko, and Tatiana Rozenblyum on the federal and Florida RICO Counts in the FAC, the Court next determines the proper measure of damages. Although Gilead has made a showing of damages as all counts on which final default judgment is warranted, this discussion focuses on damages under the federal and Florida RICO claims, because those statutes mandate trebling of actual damages and therefore represent the outer bounds of Gilead's recovery. *See* 18 U.S.C. 1964(c) (providing that a successful plaintiff "shall recover threefold the damages he sustains and the cost of the suit"); Fla. Stat. § 778.104 (providing that a plaintiff "shall have a cause of action for threefold the damages actually sustained" in a Florida RICO case).

Other courts in this district apply the "out-of-pocket" rule in assessing damages for cases where, as here, the plaintiff's RICO claims are based on fraud. *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1326 (S.D. Fla. 2009) (determining that out-of-pocket costs were the appropriate measure of damages in a RICO case based on the defendant's filing of fraudulent insurance claims). This is consistent with Florida law, where the proper measure of damages for a successful fraud claim is typically the amount the plaintiff actually lost—unless the plaintiff can show that his damages are higher such that he would be entitled to damages under the benefit-of-the-bargain rule, which measures damages by the victim's expected profits. *See Nordyne, Inc. v. Fla. Mobile Home Supply, Inc.*, 625 So. 2d 1283, 1286–87 (Fla. Dist. Ct. App. 1993) (recognizing that expectation damages under the benefit-of-the-bargain rule may be necessary to make a fraud victim whole, where out-of-pocket damages will not suffice).

Here, Gilead does not seek damages based on its expected profits for the fraudulent transactions, opting instead for damages as calculated under the out-of-pocket rule [ECF No. 884 p. 38 (asserting that "Gilead is entitled to an award of damages for its fraud and RICO claims, i.e., its out-of-pocket losses"). Gilead has provided ample evidence in the form of affidavits, testimony, and reimbursement records that establish that it paid $43.8 million in connection with 21,906 reimbursements to members of the United Conspiracy as a result of the conspiracy members' fraudulent activity [ECF Nos. 884-16 ¶¶ 11; 886-1 p. 9; 886-9; 886-10]. Furthermore, under Florida law, "[j]oint and several liability exists where two or more wrongdoers [] contribute to the injury of another by their several acts, which operate concurrently, so that in effect the damages suffered are rendered inseparable." *Albertson's Inc. v. Adams*, 473 So. 2d 231, 233 (Fla. Dist. Ct. App. 1985). And, as discussed above, under the federal and Florida RICO Acts, Gilead is entitled to three times this amount. 18 U.S.C. § 1964(c); Fla Stat. § 772.104. Accordingly, Baikal

Marketing Group, Inc., Arsen Bazylenko, and Tatiana Rozenblyum are jointly and severally liable for $131,400,000—three times the amount of Gilead's out-of-pocket costs. Because final default judgment on the federal and Florida RICO claims are not entered against Priority Health Medical Center and Nick Myrtil, they are jointly and severally liable for $43,800,000 of the total.[2]

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Gilead's Motion for Default Final Judgment and Permanent Injunction against the Defaulting Defendants [ECF No. 883] is **GRANTED IN PART AND DENIED IN PART**.

2. Default final judgment is entered in favor of Gilead and against the Defaulting Defendants on Counts XIII and XVI.

3. Default final judgment is entered in favor of Gilead and against Defendants Baikal Marketing Group, Inc. and Priority Health Medical Center on Counts I, III, V, VI, VIII, IX, X, XI, XII, XIV, and XV.

4. Default final judgment is entered in favor of Gilead and against Defendants Baikal Marketing Group, Inc., Arsen Bazylenko, and Tatiana Rozenblyum on Counts XVII, XVIII, XIX, and XX.

---

[2] The Court declines to exercise its discretion under the Lanham Act (Counts IX through XIII) to treble damages against Priority Health Medical Center and Nick Myrtil. *See* 15 U.S.C. § 1117(a).

CASE NO. 20-24523-CIV-CANNON/Otazo-Reyes

5. Gilead is awarded damages in the amount of $131,400,000 as specified below.

    a. Defendants Baikal Marketing Group, Inc., Arsen Bazylenko, and Tatiana Rozenblyum are jointly and severally liable for the full $131,400,000, which represents trebled damages as required on Counts XVII, XVIII, XIX, and XX.

    b. Defendants Priority Health Medical Center and Nick Myrtil are jointly and severally liable for $43,800,000 of that amount based on Counts I, III, V, IX, X, XI, XII, and XIII.

6. Immediately upon service of this Order in the manner described below, the Defaulting Defendants shall be immediately and permanently enjoined from:

    a. Enrolling, attempting to enroll, or facilitating the enrollment of any individual in Gilead's Patient Assistance Program ("PAP"), Medication Assistance Program ("MAP"), or any program that provides access to free Gilead Medication;

    b. Prescribing or seeking to prescribe to any individual enrolled in Gilead's PAP or MAP any medication that is manufactured and/or marketed by Gilead ("Gilead Medication") and for which reimbursement is or will be sought through Gilead's PAP or MAP;

    c. Seeking or accepting reimbursement, or facilitating another individual's or entity's attempt to seek or accept reimbursement, either directly or indirectly, for any Gilead Medication dispensed to any individual enrolled in Gilead's PAP or MAP;

    d. Dispensing Gilead Medication to individuals in packaging other than original, unopened containers from the manufacturer;

    e. Dispensing Gilead Medication to individuals unaccompanied by the FDA-approved labeling, package insert, lot number, serialization number, or expiration date;

    f.  Selling, purchasing, or otherwise obtaining Gilead Medication that had previously been filled or dispensed;

    g.  Discarding, destroying, transferring, or disposing in any manner, any information, computer files, electronic files, WhatsApp or text messages, business records (including but not limited to e-mail communications) or other documents relating in any way to any of the activities referred to in Paragraphs 6(a)–(f) above for a period of four years after entry of this order; and

    h.  Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in Paragraphs 6(a)–(f) above.

7. Service of this Order shall be made by delivering true copies thereof to any person of suitable age found at Defaulting Defendants' business or home addresses, or if no persons are present, by fixing a copy to the door; or if service cannot be effectuated in the foregoing manner despite the exercise of reasonable diligence, by delivering the Order to the Florida Secretary of State or via electronic means, and that such service shall be deemed sufficient pursuant to Rule 4 of the Federal Rules of Civil Procedure.

8. **On or before April 3, 2023**, Gilead shall file on the docket affidavits of service on each of the Defaulting Defendants consistent with the foregoing.

9. The Clerk shall **CLOSE** this case. Any scheduled hearings are **CANCELED**, any pending motions are **DENIED AS MOOT**, and all deadlines, except those specified in this Order, are **TERMINATED**.

CASE NO. 20-24523-CIV-CANNON/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 7th day of March 2023.

                                                          **AILEEN M. CANNON**
                                            **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record